UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| PATRICIA H.[1], | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )   CIVIL NO. 1:20cv347 |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Commissioner of Social Security, | ) |
| | ) |
|    Defendant. | ) |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application a period of disability and for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. 42 U.S.C. § 423(d), § 1382c(a)(3). Section 405(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for disability insurance benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental

---

[1] To protect privacy, Plaintiff's full name will not be used in this Order.

impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings. *Scott v. Astrue*, 734, 739 (7th Cir. 2011); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see also Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2024.

2. The claimant has not engaged in substantial gainful activity since October 9, 2018, the amended alleged onset date (20 CFR 404.1571 *et seq*.).

3. The claimant has the following severe impairments: PTSD, generalized anxiety disorder, social anxiety disorder, major depression, residuals to the left side of her body and lumbar spine due to gunshot wounds (including neuropathy in her left lower extremity), obesity, and left carpal tunnel syndrome (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that she can never climb ladders, ropes, or scaffolds and she can only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. She needs to avoid unprotected heights and dangerous moving machinery. She can perform frequent handling and fingering with the non-dominant (left) upper extremity. She must avoid concentrated exposure to wetness and vibration. She can perform work requiring simple instructions and routine, repetitive tasks, but she cannot perform work requiring a specific production rate (such as assembly-line work). She can make only simple work-related decisions, maintain attention and concentration for two-hour segments, and respond appropriately to predictable, routine changes in the workplace. She can have brief and superficial interactions with others (defined as occasional interaction with supervisors apart from what is necessary for general instruction, task completion, or training, and occasional interaction with co-workers and the general public). She cannot perform tandem tasks.

6. The claimant is capable of performing past relevant work as a cleaner (DOT #323.687-014), both as she actually did this job and as it is generally done in the national economy. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from October 9, 2018, through the date of this decision (20 CFR 404.1520(f)).

(Tr. 17-29).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to disability benefits. The ALJ's decision became the final agency decision when the Appeals Council denied

review.  This appeal followed.

Plaintiff filed her opening brief on September 20, 2021.  On October 29, 2021, the defendant filed a memorandum in support of the Commissioner's decision. Plaintiff has declined to file a reply.  Upon full review of the record in this cause, this court is of the view that the ALJ's decision must be affirmed.

A five-step test has been established to determine whether a claimant is disabled.  *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987).  The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order:  (1)  Is the claimant presently unemployed?  (2)  Is the claimant's impairment "severe"?  (3)  Does the impairment meet or exceed one of a list of specific impairments?  (4)  Is the claimant unable to perform his or her former occupation?  (5)  Is the claimant unable to perform any other work within the economy?  An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled.  A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984).  From the nature of the ALJ's decision to deny benefits, it is clear that step four was the determinative inquiry.

Plaintiff alleges the following impairments: left carpal tunnel syndrome, obesity, post-traumatic stress disorder, generalized anxiety disorder, social anxiety disorder, major depression, bullet fragments, hematuria, sinusitis, allergic rhinitis, hypertension, insomnia, chronic neck pain, labyrinthitis, mild levoscoliosis of the upper thoracic spine, insomnia, and headaches.

In June of 2017, Plaintiff rejected the advances of a man, who was her friend. In response, the man shot her 12 to 14 times in a building at the cosmetology school where she was a student. After she escaped, the man shot himself and died. Afterwards, Park Center, a mental health provider, treated Plaintiff for six months in 2017.

On February 14, 2019, consultative psychologist Leslie Predina, Ph. D. H.S.P.P., conducted a mental health status examination. Dr. Predina diagnosed: post-traumatic stress disorder-with dissociative symptoms; generalized anxiety disorder; and social anxiety disorder.

On February 18, 2019, a non-examining consultant graded Plaintiff as: understand, remember, or apply information: no impairment; interact with others: mild impairment; concentrate, persist, or maintain pace: mild impairment; adapt or manage oneself: no impairment. On April 17, 2019, another non-examining consultant arrived at the same gradations as the first non-examining consultant.

On March 5, 2019, Plaintiff began mental health treatment with James A. Cates Ph. D. of We Care Counseling. After conducting his initial mental status examination, Dr. Cates arrived at provisional diagnoses of PTSD and depressive disorder. Dr. Cates recommended Rapid Resolution Therapy (RRT) to address Plaintiff's trauma. Dr. Cates described her health condition as a "…severe emotional and physical disability."

Northeastern Center, another mental health provider, treated Plaintiff from approximately March 2019 through at least December 2019. A psychiatrist at Northeaster Center diagnosed Plaintiff as follows: Posttraumatic Stress Disorder with dissociative symptoms and depersonalization; Generalized Anxiety Disorder; Major Depressive Disorder, moderate. Plaintiff received psychotherapy and medication, including Gabapentin and Cymbalta.

5

On May 21, 2019, Plaintiff's Park Center therapist, Janet Anderson, MSN, APN, opined: "[Plaintiff] is been treated through Park Center for her post traumatic stress disorder as a result of a traumatic and violent event in Ft Wayne. I feel it would be best for her to live in a different and safer feeling environment. The sounds of gunshots and the frequency of the ambulances aggravate her symptoms, both psychiatrically and medically."

On October 3, 2019, Northeastern Center therapist, Christine Swander MSW LSW, opined as follows: [Plaintiff] is being seen at our facility for individual therapy and treatment for posttraumatic stress disorder. [Plaintiff] reports the following symptoms to validate this diagnosis: (1) recurrent, involuntary, and intrusive distressing memories of the traumatic event. -Recurrent distressing dreams in which the content and/or affect of the dream are related to the traumatic event; (2) dissociative reactions (*e g*., flashbacks) in which the individual feels or acts as if the traumatic event were recurring. (Such reactions may occur on a continuum, with the most extreme expression being a complete loss of awareness of present surroundings.); (3) intense or prolonged psychological distress at exposure to internal or external cues that symbolize or resemble an aspect of the traumatic event; (4) marked physiological reactions to internal or external cues that symbolize or resemble an aspect of the traumatic event; (5) avoidance of or efforts to avoid distressing memories, thoughts, or feelings about or closely associated with the traumatic event; (6) avoidance of or efforts to avoid external reminders (people, places, conversations, activities, objects, situations) that arouse distressing memories, thoughts, or feelings about or closely associated with the traumatic event.

On January 23, 2020, Plaintiff's Northeastern therapist, Christine Swander MSW LSW, completed a Fort Wayne Housing Authority "Verification of Disability/Handicap," asserting that

Plaintiff met the disability requirements of 42 U.S.C. 423 (the Social Security disability definition) as required by the U.S. Department of Housing and Urban Development (HUD).

In support of remand, Plaintiff argues that the ALJ improperly overemphasized daily activities and thus the ALJ's RFC assessment was not supported by substantial evidence. A careful review of the decision, however, reveals that the ALJ relied on several factors in crafting the RFC, such as work activity after the onset date and medical opinion evidence, and did not overemphasize daily activities. With respect to daily activities, and Plaintiff's mother's description of Plaintiff's limitations, the decision reads:

> First, as noted earlier, the claimant has worked at least on a part-time basis since the amended alleged onset date. Although her earnings from this work activity did not exceed substantial gainful activity limits, it still suggests that she is not as limited as she and her mother alleged. Next, there is no evidence in the record that the claimant's mother is a physician, psychologist, or any other sort of acceptable medical provider, as per the Social Security Administration's regulations. Thus, she is likely not well-qualified to comment on the claimant's impairments and limitations. In addition, by virtue of her relationship with the claimant, she is not likely to be a particularly objective reporter on the claimant's impairments and limitations.
>
> Furthermore, the record reflects that the claimant herself alleged that she is able to get along with others without difficulty (Ex. 5E, 9E). The record also reflects that the claimant is able to get along with her mother well enough to live with her, has at least one friend, and is able to care for her minor children, do her daughter's hair, walk her children to the bus stop, do some cooking, put soap in a washing machine and start it, drive, go to the grocery store (albeit allegedly only with her children), pay bills, count change, handle bank accounts, feed her cat, take her medications with reminders, go to appointments with reminders, mop her floor, use Messenger on Facebook, watch television, follow instructions "good," and go out alone (Ex. 5E, 6E, 9E, claimant's testimony). The undersigned is mindful of the fact that the ability to perform daily activities is not necessarily consistent with the ability to perform full-time work; however, the ability to perform such daily activities does suggest that the claimant is not as limited as she and her mother alleged.

(Tr. 20-21)

Clearly, the ALJ's discussion of daily activities was proper and, in conjunction with other factors such as work activity and the medical evidence, provides substantial evidence for the ALJ's RFC assessment.

Plaintiff argues that the ALJ's discussion of daily activities is evidence that the ALJ did not believe that the other evidence (continuing to work, medical opinion evidence that Plaintiff was not as limited as she alleged) supported the RFC assessment. Plaintiff's argument is unsupported. The regulations specifically instruct ALJs that factors relevant to the RFC assessment include daily activities. 20 C.F.R. §404.1529(c)(3). Thus it is clearly not reversible error for the ALJ to consider daily activities in conjunction with other factors, such as ability to continue working and opinion medical evidence.

Plaintiff also notes that Dr. Predina stated that Plaintiff would struggle to get along with others due to mental health issues, and that this should have prompted a more restrictive RFC. However, the ALJ extensively discussed the medical evidence, including Dr. Predina's opinion:

> Moreover, the other medical sources of record usually described the claimant as alert and oriented, as able to answer questions, and/or as exhibiting normal judgment, insight, and/or thought process, and/or as exhibiting unimpaired memory (Ex. 1F, 3F, 4F, 7F-9F). * * * The undersigned finds that, in interacting with others, the claimant has a moderate limitation. This is more restrictive than the opinion of the State Agency psychologists that the claimant was only mildly limited in interacting with others (Ex. 1A, 3A). * * * She is also able to work part-time in a job that requires social interaction.
>
> In addition, progress notes from Northeastern Center and Ms. Rumschlag and the report from Dr. Predina do not contain documentation to support a finding that the claimant is markedly or extremely limited in interacting with others. The claimant consistently denied feeling suicidal and homicidal, and her mental status examination findings with regard to interacting with others were within normal limits, except for sad/depressed and anxious mood, traumatized mood, flat and labile affect, poor eye contact, tearfulness/crying, monotone speech, and paranoia/suspiciousness (Ex. 2F, 5F, 10F). The claimant was also usually

> described by the other medical sources of record as cooperative, as exhibiting normal affect and mood, and/or as able to make eye contact (Ex. 3F, 4F, 7F). Furthermore, there is no evidence in the record that the claimant has been hospitalized on an inpatient basis for a psychiatric reason, especially since the amended alleged onset date.

(Tr. 22-23).

In light of this discussion by the ALJ, there is no basis for this Court to rule that the ALJ's analysis is "patently wrong", and thus no basis for remand. Accordingly, the decision will be affirmed.

## Conclusion

On the basis of the foregoing, the decision of the Commissioner is hereby AFFIRMED.

Entered: November 22, 2021.

s/ William C. Lee<br>
William C. Lee, Judge<br>
United States District Court